# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEXTER SAFFOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 08-cv-5032 |
| ) | |
| VILLAGE OF SCHAUMBURG, et al. ) | Judge Robert M. Dow, Jr., |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dexter Saffold ("Plaintiff"), filed a six-count *pro se* complaint [64] against Defendants, the Village of Schaumburg ("the Village"), Schaumburg Police Officer Kurt Metzger ("Metzger"), Schaumburg Police Officer Gregory Klebba ("Klebba"), the City of Chicago ("the City"), Chicago Police Officer Jonathan Martinez ("Martinez"), Chicago Police Officer Badriyyah Fateen ("Fateen"), and Verizon Wireless of employees Diane Wilson ("Wilson"), Peter Austin ("Austin"), Lowell McAdam ("McAdam") alleging violations of the Fourth and Fourteenth Amendments and state law, and seeking damages pursuant to 42 U.S.C. §§ 1983 and 1988.

The Village, Metzger, and Klebba (collectively the "Village Defendants") filed a motion for summary judgment [67], which is currently before the Court. For the reasons stated below, Defendants' motion for summary judgment is granted as to the Section 1983 claims against the Village Defendants, and Plaintiff's state law claims against the Village Defendants are dismissed without prejudice.[1]

---

[1] The Court also has before it a motion to dismiss [61] filed by Defendant City of Chicago and two of its police officers, Defendants Martinez and Fateen ("the City Defendants"). Although Plaintiffs' claims against all Defendants arise out of the same incident, the Village Defendants' motion for summary

## I. Background

### A. Summary Judgment Pleadings

On February 13, 2009, the Village Defendants filed a motion for summary judgment [67], a supporting memorandum [68], and a Local Rule 56.1(a)(3) statement of material facts ("Def. SOF") [69]. On February 24, 2009, this Court entered a minute order [71] setting a briefing schedule on the summary judgment motion. In the February 24th minute order, the Court directed the Defendants to serve on Plaintiff the Notice to Pro Se Litigants Opposing Summary Judgment advising Plaintiff of his obligations in responding to Defendant's motion for summary judgment, as required by Local Rule 56.2. On April 22, 2009, Plaintiff filed a response to the Village Defendants' motion for summary judgment [74], but did not include a response to Defendants' Local Rule 56.1 statement. In view of Plaintiff's *pro se* status, on its own motion the Court issued a minute order on June 10, 2009 [76] stating in part:

> In addition, the Court notes that in its 2/24/09 Minute Order [71], the Court gave Plaintiff until 4/24/09 to file a response brief in opposition to Defendants motion for summary judgment, a response to Defendants Rule 56.1 statement of undisputed facts, and a Rule 56.1 statement of additional facts. Although Plaintiff filed a response to Defendants motion for summary judgment [74], it does not appear from the docket sheet in this case that Plaintiff filed a response to Defendants Rule 56.1 statement. Plaintiff is given to 6/24/09 to submit any response to Defendants' Rule 56.1 statement that he may wish to file. Plaintiff is reminded that the Notice to Pro Se Litigants Opposing Summary Judgment is available on the District Court web page: www.ilnd.uscourts.gov, under Local Rule 56.2. Plaintiff also is again reminded that the services of the Courts Pro Se Help Desk are available to assist should Plaintiff have questions about the form that his responses should take or on matters of court procedures and the like.

Despite that reminder from the Court, Plaintiff failed to respond to Defendant's Rule 56.1 statement, as Local Rule 56.1(b)(3) requires.

---

judgment will be resolved on the basis of a fuller record, while the Court may look only to the well-pleaded allegations of the complaint, which are accepted as true, in ruling on the City Defendants' motion to dismiss.

Pursuant to Local Rule 56.1, facts included in a party's Local Rule 56.1 statement that are not properly denied by the opposing party are deemed to be admitted. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) (district court has discretion to require strict compliance with L.R. 56.1). Even *pro se* litigants are required to follow the Federal Rules of Civil Procedure and the Local Rules; therefore, Plaintiff is not excused from complying with L.R. 56.1(b)(3). See *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) ("pro se litigants are not excused from compliance with procedural rules"); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (stating that "the Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure"); *Walridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) (failure to comply with L.R. 56.1 is "not a harmless technicality"). Because Plaintiff failed to submit responses to Defendants' statement of facts, the Court deems admitted all of Defendants' factual allegations that are properly supported by admissible record evidence. See *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities."); *Cady*, 467 F.3d at 1061 (finding that a district court did not abuse its discretion by adopting the version of events in defendants' L.R. 56.1 statement where the *pro se* plaintiff failed to respond to those facts despite the opportunity to do so); *McIntosh v. Illinois Dept. of Employment Sec.*, 2007 WL 1958577, at *5 (N.D. Ill. July 2, 2007) (deeming all facts in defendant's Rule 56.1 statement admitted where *pro se* plaintiff failed to respond to defendant's statement); *Othon v. LG Electronics USA, Inc.*, 2009 WL 1748243, at *2 (N.D. Ill. June 18, 2009) (where *pro se* plaintiff failed to comply with Local Rule 56.1, deeming "the properly

supported facts contained in [defendant's] Local Rule 56.1 statement of facts * * * to be admitted").

## B. Factual Background

On November 1, 2006, Schaumburg Police Officer Maguire was dispatched to a Verizon Wireless location in Schaumburg, IL to respond to a report of a harassing telephone call. Def. SOF at ¶ 5. According to Officer Maguire's case report, Verizon Wireless manager Peter Austin reported that at approximately 10:50 a.m. on November 1st, a customer who identified himself as Dexter Saffold called the Verizon Wireless location in Schaumburg regarding the outstanding balance on his cell phone account. Def. SOF at ¶ 5. The report provided that, according to Austin, Saffold spoke to Verizon Financial Services Representative Luis Castillo, and told Mr. Castillo "I have a bomb and I'm going to blow up the place." *Id.* Austin further reported that a Verizon Wireless location in Dublin, Ohio had received a threatening phone call from a Dexter Saffold at 11:11 a.m. on November 1st, in which Saffold threatened to pay his outstanding balance with a gun at the Verizon store. *Id.* The second call was recorded. *Id.*

On November 3, 2006, Schaumburg Police Officer Palacios responded to a call regarding a harassing telephone call reported by Verizon Wireless Corporate Security Manager Diane Wilson. Def. SOF at ¶ 6. Officer Palacios' report indicates that on November 2, 2006, Wilson received a threatening voicemail message from a customer who identified himself as Dexter Saffold, in which the caller threatened to follow Wilson home and shoot her. *Id.*

Defendant Metzger, a detective with the Schaumburg Police Department, was assigned to conduct a follow up investigation of both threatening phone call reports. Def. SOF at ¶¶ 2, 3. On the evening of November 3, 2006, Metzger spoke with Wilson, who confirmed that a man identifying himself as Dexter Saffold had threatened Verizon service representatives over the

4

phone, and had left a threatening message on her voicemail. Def. SOF at ¶ 7. The following day, Wilson delivered two audio recordings to the Schaumburg Police Department – one of the November 1st call to the Verizon Wireless location in Dublin, Ohio, and a second of the November 2nd message left on Wilson's voicemail. Def. SOF at ¶¶ 7, 10, 11. Metzger listened to the recordings at approximately 2 p.m. on November 6, 2006. Def. SOF at ¶ 9. In the first recording, a man who identified himself as Dexter Saffold threatened to pay his account with a gun in hand at a Verizon store. Def. SOF at ¶ 10. In the second recording, Saffold called Wilson a "dumb bitch" and threatened to follow her home and shoot her. Def. SOF at ¶ 11.

Later on the afternoon of November 6th, Metzger and Defendant Klebba, also a detective with the Schaumburg Police Department, went to locate Saffold at 7947 S. Marquette Ave. Def. SOF at ¶¶ 2, 12, 15. At approximately 5 p.m., Metzger and Klebba arrived in the area of 79th and Marquette Ave. in Chicago, and contacted the Chicago Police Department for assistance. Def. SOF at ¶ 13. Chicago Police Officers Martinez and Fateen responded, and Metzger briefed them on the investigation. Def. SOF at ¶ 14. The officers then proceeded to Saffold's residence, where Metzger knocked on the door and identified himself as a police officer. Def. SOF at ¶¶ 15-16. A male voice responded, asking what they wanted and whether they had a warrant. Def. SOF at ¶ 16. Metzger stated that they had probable cause to arrest him. Def. SOF at ¶ 17. Saffold then opened the door and, at the threshold, complied with the officers verbal commands to place his hands behind his back. Def. SOF at ¶ 18.[2] Metzger advised Saffold that he was under arrest, and was going to be transported to the Schaumburg Police Department. Def. SOF at ¶ 19. After collecting various medications and other items Saffold wanted to take with him,

---

[2] The Court notes that in his complaint, Plaintiff alleges that one of the officers slammed him up against the wall and handcuffed him, Cmplt. at p. 3, ¶ 2. That allegation is not inconsistent with the Village Defendants' version of the events, and Plaintiff's complaint does not include a claim for excessive force in any event.

5

the officers transported Saffold to the Schaumburg detention facility. Def. SOF at ¶¶ 20-22. Saffold was charged with two counts of harassment by telephone, to which he pled guilty on December 19, 2008. Def. SOF at ¶¶ 23-24.

The claims against the Village Defendants are set forth in Counts 1 and 2 of the complaint. Count 1 is directed against Defendant Metzger individually and as "as servant and/or employee and/or agent for the Village of Schaumburg," and asserts a Section 1983 false arrest claim and state law claims for false arrest and false imprisonment. Count 2 asserts nearly identical claims against Defendant Klebba individually and as "as servant and/or employee and/or agent for the Village of Schaumburg." None of the counts are nominally directed against the Village.

## II.  Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is

proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

    **A. Section 1983 Claims Against Defendants Metzger and Klebba**

        *1. Heck v. Humphrey*

The Village Defendants contend that Plaintiff's conviction for telephone harassment bars his Section 1983 claims for false arrest against Defendants Metzger and Klebba. In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that a plaintiff who has been convicted of a crime cannot maintain a Section 1983 claim where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[,] * * * unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." The *Heck* rule "is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006).

As the Seventh Circuit has recognized, *Heck* does not bar all Section 1983 false arrest claims "because a wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction," and therefore "one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Booker v. Ward,* 94 F.3d 1052, 1056 (7th Cir. 1996); see also *Reynolds v. Jamison*, 488 F.3d 756, 767 (7th Cir. 2007) (holding that defendant's § 1983 claim for false arrest was not *Heck*-barred despite his conviction for telephone

7

harassment because "[w]hether Officer Darr had probable cause to arrest [defendant] has no bearing on the validity of his subsequent guilty plea and criminal conviction").

However, the Seventh Circuit has held that even where a claim is theoretically compatible with the underlying conviction – like Plaintiff's false arrest claims here – it may nevertheless be *Heck*-barred "if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *McCann*, 466 F.3d at 621 (citing *Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir. 2003)). As the Seventh Circuit explained in *Okoro*, "[i]t is irrelevant that [plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." 324 F.3d at 490. In other words, a plaintiff can plead himself into a *Heck* bar by making allegations that *necessarily* imply the invalidity of his conviction. See *Gilbert v. Cook,* 512 F.3d 899, 902 (7th Cir. 2008); *Nelson v. Campbell,* 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'"). For example, in *Okoro*, the Seventh Circuit held that the plaintiff's Section 1983 suit, in which he sought the return of gems the police allegedly stole from him during a search of his residence that led to his conviction on drug charges, was *Heck*-barred because his complaint alleged that he was not selling drugs, an allegation that was inconsistent with the validity of his drug conviction. *Id.* To determine whether Plaintiff's claim is *Heck*-barred, this Court must ask, "not whether [Plaintiff] *could have* drafted a complaint that steers clear of *Heck* (he could have), but whether he did." *McCann*, 466 F.3d at 622.

Here, Plaintiff's complaint contains allegations that are necessarily inconsistent with the validity of his conviction for telephone harassment. For example, he alleges that he was held "for crimes he did not commit." Cmplt. at Count 1, ¶ 7; see also *id.* at Count 2, ¶ 7 (same). In

8

light of Plaintiff's *pro se* status and the fact that the majority of his complaint does not attack his underlying conviction, the Court is reluctant to find that Plaintiff's Section 1983 claims are *Heck*-barred. Nevertheless, the Seventh Circuit has explained that "if [a plaintiff] makes allegations that are inconsistent with [his] conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro*, 324 F.3d at 490. However, the Court need not definitively resolve the *Heck* issue, because, as discussed below, Defendants Metzger and Klebba are entitled to summary judgment on Plaintiffs' Section 1983 claims because the arrest did not violate Plaintiff's constitutional rights.

### 2. *Constitutionality of the Warrantless Arrest*

The Village Defendants argue that the individual Defendants are entitled to summary judgment because the officers had probable cause to arrest Plaintiff. According to the Village Defendants, the existence of probable cause forecloses Section 1983 claims for false arrest. But probable cause alone is not always sufficient to justify a warrantless arrest. While "police officers may constitutionally arrest an individual in a public place (*e.g.*, outside) without a warrant, if they have probable cause[,] * * * police officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001).

The Seventh Circuit has observed that "exactly where outside ends and where the home begins" – and thus the point at which the existence of probable cause alone is not sufficient to effect a warrantless arrest – "is not a point immediately obvious." *Sparing*, 266 F.3d at 689. For example, in *U.S. v. Santana*, 427 U.S. 38, 42 (1976), the Supreme Court held that a person standing in the open doorway of her home was in a public place, and not inside the home, for

9

purposes of the Fourth Amendment, such that only probable cause was required for her warrantless arrest to be constitutional. In *U.S. v. Berkowitz*, 927 F.2d 1376, 1387 (7th Cir. 1991), the Seventh Circuit, applying *Santana*, held that where "the police assert from outside the home their authority to arrest a person * * * [and] the person recognizes and submits to that authority," there is no Fourth Amendment violation. The Seventh Circuit has since clarified that *Berkowitz* does not stand for the proposition that a person "surrender[s] reasonable expectations of privacy in the home by simply answering a knock at the door." *Sparing*, 266 F.3d at 690. Nor did it "overturn longstanding Fourth Amendment precedent that absent exigent circumstances, police without a warrant must obtain an individual's valid and voluntary consent before entering the home to effectuate or complete an arrest." *Id.* Rather, "*Berkowitz* only endorsed as reasonable under the Fourth Amendment, a slight entry into the home to complete an arrest announced outside the home when the individual acquiesced to the entry while standing fractions of an inch behind the threshold of her home with the door open." *Id.* (holding that officer's unconsented-to entry to make warrantless arrest violated Fourth Amendment where arrestee stood inside home, behind closed screen door, to speak to police officer).

Here, Plaintiff was arrested at the threshold of his home. Def. SOF at ¶ 18. *Berkowitz* and *Sparing* teach that, under these circumstances, the Fourth Amendment requires both (1) probable cause to arrest Plaintiff *and* (2) either Plaintiff' consent to the arrest or the existence of exigent circumstances. See *Collier v. Baker*, 1999 WL 543206, at *3 (N.D. Ill. July 23, 1999) (noting that in the context of a warrantless arrest in the home, lack of probable cause and lack consent or exigent circumstances constitute independent Fourth Amendment violations). The Court will address each of these requirements in turn.

"The police have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (quoting *Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993)). Both the Supreme Court and the Seventh Circuit consistently have advised that the rule of probable cause is a "'practical, nontechnical conception' that affords the best compromise between the interests of individual liberty and effective law enforcement." *U.S. v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)); see also *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949) (noting that the probable cause determination involves "probabilities," which "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"). Therefore, probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *U.S. v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). As long as "the totality of the circumstances" demonstrate "a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citations omitted) (explaining that probable cause "requires more than bare suspicion" but "less than 'probability,'" and does not require "a showing that the officer's belief is more likely true than false") (citations omitted).

In determining whether probable cause existed at the time of an arrest, "the court steps into the shoes of a reasonable person in the position of the officer" and considers the facts, not "'as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Wheeler v. Lawson*, 539 F.3d 629,

634 (7th Cir. 2008) (internal citations omitted). The proper inquiry is objective; thus, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

In a damages suit such as this, it is not always appropriate for the court to resolve the question of probable cause on summary judgment, as the probable cause determination "typically falls within the province of the jury." *Sheik-Abdi*, 37 F.3d at 1246. However, "a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.*; see also *Maxwell*, 998 F.2d at 434 ("[i]f the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists").

The Court concludes that, when the undisputed facts are considered in the light most favorable to Plaintiff, there can be no difference of opinion here – Defendants Metzger and Klebba had probable cause to arrest Plaintiff. Defendant Metzger had reviewed Officer Maguire and Officer Palacios' case reports regarding harassing phone calls received by Verizon Wireless employees from a person identifying himself as Dexter Saffold. Def. SOF at ¶ 4. Officer Maguire reported that Verizon Wireless manager Peter Austin told him that a man identifying himself as Dexter Saffold had called in a bomb threat to the Schaumburg Verizon location, and had threatened to pay his outstanding balance with a gun at the Verizon store in a second call to a Verizon Wireless location in Dublin, Ohio. Def. SOF at ¶ 5. Officer Maguire's report also identified 7947 S. Marquette Ave. as caller Dexter Saffold's last known address. Def. SOF, Ex. E at 2. Officer Palacios reported that Verizon Wireless Corporate Security Manager Diane Wilson told him that she had received a voicemail message from a customer named Dexter Saffold threatening to shoot her. Def. SOF at ¶ 6. Metzger also spoke with Wilson personally,

who confirmed the reported threats, and listened to audio recordings of the November 1st call to the Verizon Wireless location in Dublin, Ohio, and the message left on Wilson's voicemail, both of which contained threats. Def. SOF at ¶¶ 7, 9-11. Metzger briefed the other officers, including Klebba, on his investigation. Def. SOF at ¶ 14.

Under Illinois law, the offense of telephone harassment is committed when a person makes a telephone call with intent to abuse, threaten or harass any person at the called number. 720 ILCS 135/1-1(2). Here, the Defendant officers were informed that a person named Dexter Saffold had made three phone calls to Verizon Wireless, in which he (1) threatened to blow up a Verizon Wireless location with a bomb, (2) threatened to pay his bill at a Verizon store with a gun, and (3) threatened to shoot a Verizon Wireless employee. The Defendant officers also were informed that the Dexter Saffold in question lived at 7947 S. Marquette Ave. The officers received this information from several reasonably trustworthy sources, including two separate police reports, Metzger's interview of Wilson, and audio recordings of two of the three threatening calls. The Court concludes that a prudent officer would have believed that probable cause existed to arrest Saffold for telephone harassment.

Plaintiff's arguments to the contrary are unconvincing. Plaintiff contends that the officers did not have sufficient information to link him to the "anonymous phone threat call" [sic] because they did not trace the calls to his home, ask the witnesses to speak to Saffold to verify that they recognized his voice as that of the caller, or determine whether the Verizon Wireless account at issue was fraudulently opened in Plaintiff's name. [74 at 3]. First, the calls were not anonymous, as Plaintiff contends. Rather, the caller identified himself as Dexter Saffold on each of the three threatening calls. Def. SOF at ¶¶ 5, 6, 7, 10, 11. Moreover, Officer Maguire's police report identified Plaintiff's address as the offender's last known address. Def.

SOF, Ex. E at 2. A prudent officer with this information could reasonably conclude, based on the totality of the circumstances, that there was a substantial chance that Plaintiff – who had the same name and address as the suspected offender – had committed the offense of telephone harassment. *Sawyer*, 224 F.3d at 679. While it is conceivable that the officers could have done more to determine with absolute certainty that Plaintiff was the caller – for example, by having the witnesses confirm that his voice was that of the caller – probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* Therefore, the Court concludes that Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether the officers had probable cause to arrest him.

As noted above, the existence of probable cause is not sufficient to justify the warrantless arrest of Plaintiff in his home; the Fourth Amendment also requires either consent or exigent circumstances. Here, Plaintiff was arrested after complying with the officers' verbal commands to place his hands behind his back. Def. SOF at ¶ 18. Under *Berkowitz*, because Plaintiff "recognize[d] and submit[ted] to [the officers'] authority," Defendants Metzger and Klebba did not violate Plaintiff's Fourth Amendment rights and are entitled to summary judgment on Plaintiffs § 1983 claims. 927 F.2d at 1387.

### B. Section 1983 Claims Against the Village

Plaintiff names the Village as a defendant in the case caption, and the complaint describes the case as one against "the Village of Schaumburg, Illinois[,] * * * Officer Kurt Metzger[,] * * * Officer Klebba[,] * * * City of Chicago, Illinois[,] * * * Officer Badriyyahi Fateen[,] * * * Officer Jonathan Martinez[,] * * * Diane Wilson, [and] Peter Austin." However, as noted above, none of the Counts in Plaintiff's complaint are directed against the Village.

Because Plaintiff is proceeding *pro se*, this Court must construe his complaint liberally and subject it to less stringent scrutiny than complaints drafted by counsel. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). In light of this "special responsibility * * * to view the *pro se* complaint with an understanding eye," the Court will construe the complaint as asserting a Section 1983 claim against the Village based on the conduct of officers Metzger and Klebba. *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996).

"[I]t is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[ ][is] liable on the underlying substantive claim.'" *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (citing *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998)); see also *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim"); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Court has determined that Defendants Metzger and Klebba did not violate Plaintiff's constitutional rights when they arrested him without a warrant, Plaintiff's Section 1983 claim against the Village fails.

Moreover, even if Plaintiff had established a constitutional violation by Defendants Metzger and Klebba, the Village would be entitled to summary judgment on Plaintiff's Section 1983 claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* provides that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Rather, "[a] municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). The "official policy" requirement for liability under Section 1983 is to "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby

15

make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986). "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). To state a Section 1983 claim against a municipality, a plaintiff must "allege that (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Plaintiff bears the burden of proving the alleged policy, custom, or usage at trial. *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). Therefore, to survive summary judgment, he must set forth specific facts showing that there is a genuine issue of material fact regarding the existence of such a policy, custom, or usage. *Id.* Here, Plaintiff alleges that Defendants Metzger and Klebba acted "under the * * * regulations policy customs and usages of the Village of Schaumburg." Cmplt. at Count 1, ¶ 3; *id.* at Count 2, ¶ 3. However, Plaintiff has not identified any particular policy, custom, or usage of the Village, let alone set forth specific facts regarding the existence of such a policy, custom, or usage. Plaintiff's conclusory allegations that the Defendant officers acted pursuant to an official Village policy are not sufficient to survive summary judgment. See *Holm v. Village of Coal City*, 2008 WL 4371293, at *7 (N.D. Ill. Sept. 19, 2008) (granting summary judgment in favor of defendant Village on *Monell* claim because *pro se* plaintiffs "failed to identify any policy or practice that causes a constitutional violation").

## C. State Law Claims Against All Village Defendants

Because the Court has concluded that the Village Defendants are entitled to summary judgment on all claims over which the Court has original jurisdiction (see 28 U.S.C. § 1367(c)(3)) should be dismissed, the Court must address whether to retain jurisdiction over Plaintiff's state law claims.[3] As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *see also, Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (district court did not abuse its discretion in declining to exercise jurisdiction over Plaintiff's state law claim where it had granted defendants summary judgment on all federal claims). Finding no justification to depart from that "usual practice" in this case, the Court dismisses the state law claims *without prejudice* to Plaintiff's right to refile them in state court. See *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002); *Sneed v. Rybicki*, 146 F.3d 478, 482 (7th Cir. 1998).

---

[3] Plaintiff asserts state law claims for false arrest and false imprisonment against the Village Defendants. See Cmplt. at Count 1, ¶ 1 (asserting claim against Metzger "for false arrest and false imprisonment under Illinois law"); *id.* at Count 2, ¶ 1 (asserting identical claim against Klebba); *id.* at 1 ("This is a case for money damages brought pursuant to 42 U.S.C. 1983 and 1988 the 4th amendment to the United State [sic] Constitution; as applied to the state [sic] by; 14th amendment and under the common law of the State of Illinois"). As discussed above, none of the Counts in Plaintiff's complaint are directed against the Village. However, the Court again will construe the complaint liberally as asserting state law false arrest and false imprisonment claims against the Village. See Cmplt. at 1 ("This is a case * * * under the common law of the State of Illinois against the Village of Schaumburg * * *"). In the motion for summary judgment, the Village Defendants do not even acknowledge these state law claims, an omission that suggests that the Village Defendants may have overlooked them entirely. The Village Defendants' apparent failure to take note of the state law claims is somewhat understandable given that Plaintiff's *pro se* complaint is written and organized in such a way that his allegations are to some degree unclear. For example, while Counts 1 and 2 allege state law claims for false arrest and false imprisonment, both of those counts are entitled – in all caps – "FALSE ARREST IN VIOLATION OF SECTION 1983 AGAINST DEFENDANT OFFICERS." Defendants' failure to address the state law claims is irrelevant because, as explained below, the Court declines to retain jurisdiction over those state law claims.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the Section 1983 claims asserted in Counts 1 and 2 of Plaintiff's complaint. Plaintiff's state law claims against the Village Defendants are dismissed without prejudice.

Dated: August 24, 2009

Robert M. Dow, Jr.
United States District Judge